

THE CITY OF NEW YORK
## LAW DEPARTMENT
SPECIAL FEDERAL LITIGATION DIVISION
100 Church Street, 3rd Floor
New York, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

JOSHUA A. WEINER
phone: (212) 356-2249
fax: (212) 356-3509
email: jweiner@law.nyc.gov

March 29, 2018

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 East Cadman Plaza
Brooklyn, NY 11201

     Re: <u>Lehman v. Titterton, et al.</u>, 18-CV-914 (BMC) (LB)

Your Honor:

   I am an attorney in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and one of the attorneys representing Defendant Brian Titterton in the above-referenced matter. Defendant writes to respectfully request a pre-motion conference concerning his proposed motion to dismiss Plaintiff's complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

   Plaintiff brings this action under 42 U.S.C. § 1983, alleging that Defendant and his fellow New York City Police Department ("NYPD") officer, Francisco Maria, entered his apartment "without consent and without a warrant or court order" in violation of the Fourth Amendment. (<u>See</u> Compl. at ¶¶ 3-8, 13-15 (ECF No. 1).) According to the Complaint, on February 13, 2015, the officers entered Plaintiff's apartment and remained there for two hours despite Plaintiff's admonition that they did not have permission to be there. (<u>See</u> <u>id.</u> at ¶¶ 3-5.) The Complaint further alleges that Plaintiff "filed a complaint with the Civilian Complaint Review Board ("CCRB") under case number 201508312," and that the CCRB found that Officer Maria "abused his authority by unlawfully entering Plaintiff's apartment." (<u>See</u> <u>id.</u> at ¶¶ 6-7.) The CCRB "made no findings against [Defendant] because he resigned [from the NYPD] after the charges were filed." (<u>See</u> <u>id.</u> at ¶ 8.)

   Plaintiff made a complaint to the CCRB on October 1, 2015, alleging, *inter alia*, that the officers abused their authority by entering the martial apartment of Plaintiff and his separated wife, Patricia Lehman, which was located at 47-39 Vernon Boulevard, Apartment 3R, in Queens (the "Apartment"). (<u>See</u> CCRB Investigative Recommendation ("CCRB

Investigation")), at p. 1, 3-4 (attached hereto as Exhibit A).)  The CCRB's Investigation made the following determinations:

On February 13, 2015, Ms. Lehman requested and secured the assistance of the officers in retrieving her belongings from the Apartment.  (See CCRB Investigation at p. 1.)  At the time, Ms. Lehman was married to Plaintiff and retained a set of keys to the Apartment.  (See id. at p. 3; 12/1/15 Affidavit of Patricia Lehman, attached hereto as Exhibit B.)   Ms. Lehman also had an active order of protection against Plaintiff, as a result of Plaintiff's arrest the previous day for assaulting and harassing Ms. Lehman on February 2, 2015.  (See CCRB Investigation at p. 1.)  The NYPD's "Complaint Report" for the February 2, 2015 incident listed the Apartment as Ms. Lehman's residence, as did Ms. Lehman's identifications.  (See id. at 3.)  Upon arriving at the Apartment along with Ms. Lehman, the officers knocked on the door.  (See id.)  Moments later, the officers and Ms. Lehman gained entry either by Plaintiff opening the door or by Ms. Lehman using her keys to open the door.  (See id.)  Plaintiff either told the officers to leave or that he "did not want this."  (See id.)  The officers, however, remained in the Apartment as Ms. Lehman gathered her belongings under their belief that it was Ms. Lehman's residence.  (See id.)  The officers' belief was informed by Ms. Lehman's possession of keys and the February 2, 2015 Complaint Report, which listed the Apartment as Ms. Lehman's residence.  (See id.)  The CCRB concluded that Officer Maria had abused his authority by entering the Apartment.  (See id. at 1.)  No finding was made as to Defendant due to his separation from the NYPD prior to the conclusion of the CCRB Investigation.  (See id. at 1.)

## II. ARGUMENT

Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Ms. Lehman possessed the requisite authority to consent to Defendant's entry into the Apartment.  Moreover, due to Ms. Lehman's status as a domestic violence victim, Plaintiff's objection to the officers' entry did not render the entry unlawful.

### A. THE COURT MAY CONSIDER THE CCRB INVESTIGATION.

On a motion to dismiss, the Court may consider documents annexed to the complaint or incorporated by reference into the complaint.  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).  Furthermore, "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002).  Here, the CCRB Investigation is unambiguously referenced and discussed in the Complaint, and therefore, incorporated by reference.  (See Compl. at ¶¶ 6-8.)  See Plains Mktg., L.P. v. Kuhn, 10-cv-2520, 2011 U.S. Dist. LEXIS 119427, at *7 (E.D.N.Y. Oct. 17, 2011) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.")  Even if it were not incorporated by reference, the CCRB Investigation is integral to the Complaint, as Plaintiff "relies heavily upon its terms and effect."  The Complaint spends little time contextualizing the officers' entry into the Apartment.  It, perhaps strategically, contains no facts whatsoever pertaining to Ms. Lehman's accompaniment of the officers to the Apartment, let alone her possession of a set of keys to the Apartment and previous domestic violence complaint against Plaintiff.  Rather, the Complaint refers to the CCRB Investigation, suggesting to the Court that it should rely upon the CCRB's factual findings and legal analysis.

(See id. at ¶¶ 6-8.) As such, the CCRB Investigation may be considered in Defendant's motion to dismiss.

### B. MS. LEHMAN CONSENTED TO THE OFFICERS' ENTRY INTO THE APARTMENT.

In the Second Circuit, third party consent will validate a warrantless entry only if (1) the third party had access to the area entered and (2) the third party had either (a) common authority over the area or (b) a substantial interest in the area or (c) permission to gain access. See United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992). "Common authority" is defined as "mutual use of the property by persons generally having joint access or control for most purposes." See United States v. Matlock, 415 U.S. 164, 172 n. 7 (1974). As to the first prong, Ms. Lehman's access to the Apartment is established by the fact that she maintained a set of keys. See United States v. Buettner-Janusch, 646 F.2d 759, 765 (2d Cir. 1981) ("[B]oth Marcis and Jolly had keys to the defendant's apartment, thus satisfying the access requirement…"). Regarding the second prong, Ms. Lehman's "common authority" over the Apartment is shown by her status as Plaintiff's spouse, possession of keys to the Apartment, and keeping of her personal belongings in the Apartment. See United States v. Trzaska, 859 F.2d 1118, 1120 (2d Cir. 1988) (common authority established by estranged wife's possession of keys and collection of personal belongings during search). Moreover, assuming *arguendo* that Ms. Lehman lacked the authority to consent to entry of the Apartment, the entry was nonetheless valid because Ms. Lehman possessed "apparent authority," meaning that the officers reasonably believed that she had the requisite authority. See Illinois v. Rodriguez, 497 U.S. 177, 188 (1990). Not only did Ms. Lehman possess keys and inform the officers that she intended to collect personal belongings from the Apartment, but Ms. Lehman listed the Apartment as her residence on the Complaint Report and her personal identifications. Moreover, federal courts have found that even a live-in girlfriend "retain[s] rights over property they are forced to flee" and, therefore, possess apparently authority over a formerly-shared dwelling. See, e.g., United States v. Turner, 23 F. Supp.3d 290, 306 (S.D.N.Y. 2014). Ms. Lehman, therefore, provided valid consent for the officers' entry.[1]

### C. PLAINTIFF'S OBJECTION DOES NOT RENDER THE OFFICERS' SEARCH UNLAWFUL.

An occupant's express refusal to permit entry "does not negate exigent circumstances to assist a suspected domestic violence victim." See Patrizio v. Nelson, 14-CV-7497 (JBW) (VMS), 2016 U.S. Dist. LEXIS 83891, at *21-25 (E.D.N.Y. June 28, 2016). As the Supreme Court stated in Georgia v. Randolph, 547 U.S. 103, 106 (2008), "it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely… however much a spouse or other co-tenant objected." Here, the officers entered the apartment under the exact circumstances contemplated in Randolph: to protect Ms. Lehman, a domestic violence victim, as she collected her belongings. As such, the officer's entry of the Apartment was lawful in spite of Plaintiff's objection.

Based on the forgoing, the Court should grant Defendant's request for a pre-motion conference regarding Defendant's anticipated motion to dismiss the Complaint.

---

[1] At the very least Defendant is entitled to qualified immunity on this set of facts.

        Respectfully submitted,

        /s/

        JOSHUA A. WEINER
        *Senior Counsel*
        Special Federal Litigation Division

cc:    Brian Lehman, Esq. *(by ECF)*